**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FREDDY PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:25-cv-727 |
| ) | |
| GATEWAY REGIONAL MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT AT LAW**

Plaintiff Freddy Parker, by his attorneys, the Garfinkel Group, LLC, complains against defendant Gateway Regional Medical Center, for negligence and in support thereof states as follows:

**PARTIES**

1. Plaintiff Freddy Parker is a citizen of Florissant, Missouri.

2. Defendant Gateway Regional Medical Center ("Gateway") is a hospital and medical services provider located in Granite City, Illinois.

3. Gateway is an Illinois limited liability company, American Healthcare Systems, LLC per the Illinois Secretary of State's website and is wholly owned and operated by American Healthcare Systems, Inc., a Nevada corporation headquartered in California that operates healthcare facilities in Illinois and North Carolina.

4. Gateway's principal place of business is 2100 Madison Avenue, Granite City, Illinois.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), to wit diversity, as it involves citizens of different states and an amount in controversy in excess of $75,000.

6. This Court is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(1), (2).

7. This is a re-filing of a matter originally proceeding in this jurisdiction, 23-cv-1323.

## FACTUAL ALLEGATIONS

8. On or about August 31, 2022, Plaintiff, a licensed commercial truck driver, applied for employment with Lazer Spot as a yard hostler, a CDL-licensed driver who moves trailers from yard to yard for trucking companies.

9. As part of the hiring process, Plaintiff was required to undergo a pre-employment drug test pursuant to Department of Transportation (DOT) and Federal Motor Carrier Safety Administration (FMCSA) guidelines, specifically 49 C.F.R. §40, *et seq.*

10. Lazer Spot scheduled for Plaintiff to undergo that drug test at Gateway Regional Medical Center in Granite City, Illinois.

11. On August 31, 2022, Plaintiff presented to Defendant's facility for his scheduled test.

12. Plaintiff provided a valid photo ID, was instructed to wash his hands, empty his pockets, and was then given a cup in which to provide a urine sample by the Collector (as that term is defined by 49 C.F.R. 40.03).

13. Plaintiff provided a urine sample into an open cup which he then gave to the Collector.

14. The Collector measured the urine's temperature, split the sample into two smaller bottles, capped those bottles, and affixed chain of custody ribbons to each cap.

15. Plaintiff then initialed the chain of custody ribbons.

**The Custody and Control Form**

16. The CCF is a multi-carbon copy document with five copies and its content, use and completion is governed by Federal regulations, specifically 49 CFR Part 40 Section 40.40.

17. Each of the five copies of the CCF is for the records of each party in the drug testing process: (1) testing facility (top/first copy); (2) medical review officer (MRO) (second copy); (3) collector (third copy); (4) employer copy; and (5) employee/donor copy.

18. The CCF is divided into sections, with each section being completed in a certain order during the collection and testing process.

19. First, the "Step 1" section involves gathering basic contact information as to the employer, donor, collector, and MRO, as well as the testing authority (e.g., FMCSA, HHS, FAA, etc.), reason for test (pre-employment, random, etc.), and drugs to be tested for.

20. Second, "Step 2" is completed after the donor provides the specimen to the collector. In this section, the collector notes whether it was a single or split sample, whether it was oral fluid or urine, and in the case of urine, a box to indicate whether the temperature was between ninety and one hundred degrees Fahrenheit, and a "remarks" line for other notes the collector wishes to provide to the tester and MRO.

21. Third, "Step 3" instructs the collector to seal the bottles/tubes containing the sample(s) and for the collector to date, and donor to initial, the seals.

22. Fourth, "Step 4" requires the collector to print and sign his or her name and note the date and time of same as well as the method (e.g., Fedex) to which the tubes will be released for transport.

23. Next, "Step 5" of the CCF is where the donor prints and signs his or her name, dates the form, and provides his email, phone number(s), and date of birth.

24. At this point, all the forms should be intact and identical in content.

25. Other than the forms detached by the collector to give to the employee, employer and collector's file, the remaining two CCF copies (the top two copies) go with the sample to the testing facility and then onto the MRO.

26. The testing facility verifies chain of custody, tests the samples, keeps a copy of the fourth CCF, and then sends the results to the MRO, who has the fifth and last copy of the CCF.

27. The MRO then fills in the last Step(s), "Step 6" and/or "Step 7."

28. Across all CCF copies, the portions of the CCF from Step 1 to Step 5 should be identical.

29. Indeed, 49 C.F.R. 40.40(c) states: "As a participant in the DOT drug testing program, you are not permitted to modify or revise the CCF" except:

    a. Adding information in the margins of the form necessary for billing; or

    b. Having the collector, MRO, or employer's information pre-printed on the form.

30. After Steps 1-4 were completed, Plaintiff completed Step 5 by signing the CCF.

31. The Collector then detached the top copy and after that occurred, Plaintiff then took a photo of second (MRO) copy of the CCF. See Exhibit A, MRO CCF Copy.

32. Plaintiff texted that photo to Lazer Spot.

33. On September 1, 2022, Plaintiff received an email from the FMCSA clearinghouse, which collects drug test information for the FMCSA and acts as a database for employers to check whether drivers' CDL licenses are valid and eligible to drive.

34. The clearinghouse email reported that it had received notice that Plaintiff had refused to submit to a DOT drug test on August 31, 2022, and notified Plaintiff that his CDL was suspended.

35. Lazer Spot pulled its offer of employment that same day on September 1, 2022.

36. Plaintiff called his contact at Lazer Spot and learned that an employee of the Defendant called Lazer Spot's human resources department and reported that Plaintiff was uncooperative, confrontational, and refused to give a urine sample.

37. On information and belief this call from Defendant to Lazer Spot occurred after Plaintiff left Defendant's premises having successfully provided a urine sample.

38. Lazer Spot human resources, not aware of the photo Plaintiff sent to his recruiter/contact showing proof of having provided a urine sample, reported the refusal to test to the FMCSA clearinghouse.

4

39. Subsequently, Plaintiff learned that Defendant, through its agents, illegally altered the Collector copy of the CCF to add content on the "Remarks" line in Step 2 not found on the CCF form Plaintiff photographed. See Exhibit B, Collector CCF Copy.

40. The information added to the form indicated that Plaintiff's urine was abnormally colored and that he was asked to re-test but refused. This information is not present on the version Plaintiff photographed after the test was completed and before he left.

41. The alteration of the CCF Collector copy was illegal and intentional.

42. Defendant's reporting of a refusal to his prospective employer was deliberate and intentional or done with an utter indifference to the consequences of such a report to Plaintiff's license and livelihood.

43. Defendant's actions were at the very least negligent, if not willful and wanton.

## COUNT I
## NEGLIGENCE

44. Parker restates and realleges paragraphs 1 through 22 of his Complaint as if fully stated and set forth herein.

45. Defendant is a Collection Site as that term is defined by 49 C.F.R. 40.3.

46. Facilities like Defendant owe a duty of reasonable care to persons like Parker whose specimens it tests for employers or prospective employers.

47. Defendant breached its duty to Parker by altering the CCF after the collection and/or reporting patently false information that Parker refused to submit to a drug test to his prospective employer.

48. As a direct and proximate result of Defendant's breach of its duty of care, Parker experienced a non-negative test result reported to the FMCSA clearinghouse and his commercial driving privileges were suspended.

49. As a direct and proximate result of Defendant's breach of duty, Parker's offer of employment with Lazer Spot was rescinded and his CDL was suspended, resulting in lost wages, lost benefits, decreased future earning power, great mental anguish and emotional distress, embarrassment, and humiliation.

50. Lazer Spot's recission of Parker's job offer and Parker's suspension of his CDL were a foreseeable consequence of Defendant's negligent or willful and wanton acts or omissions.

Wherefore, the Plaintiff Freddy Parker, respectfully requests that this Court enter judgment against Defendant Gateway Regional Medical Center, awarding him:

    A. Front pay;

    B. Back pay;

    C. Payment for fringe benefits lost as a result of Defendant's negligence;

    D. Compensatory damages, including but not limited to damages for emotional distress;

    E. Punitive damages;

    F. The costs of this action;

    G. Attorneys' fees; and

    H. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted,

*/s/ Matthew Fletcher*
One of the Plaintiff's Attorneys

Matthew Fletcher (ARDC No. 6305931)
The Garfinkel Group, LLC
The Civitas
701 N. Milwaukee Avenue

Chicago, IL 60642
(312) 736-7991
matthew@garfinkelgroup.com