UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FREDDY PARKER,

      Plaintiff,

      v.

GATEWAY REGIONAL MEDICAL CENTER,

      Defendant.

Case No. 25-cv-00727-JPG

**MEMORANDUM AND ORDER**

This case is before the Court on Defendant Gateway Regional Medical Center's Motion for Reconsideration (Doc. 28). It asks the Court to reconsider its Memorandum and Order, dated January 8, 2026, that denied Defendant's motion to dismiss (Doc. 27). In the alternative, it asks the Court to certify an interlocutory appeal. Plaintiff Freddy Parker filed a response (Doc. 30).

I.      **ANALYSIS**

A.  Motion for Reconsideration:

"A court has the power to revisit prior decisions of its own . . . in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances . . . ." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). The decision of whether to reconsider a previous ruling in the same case is governed by the law of the case doctrine. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006). The law of the case is a discretionary doctrine that creates a presumption against reopening matters already decided in the same litigation and authorizes reconsideration only for a compelling reason such as where the court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or

where significant new facts have been discovered. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Here, there is no compelling reason for the Court to reconsider its decision. To begin, the Court's ruling was not based on a misapprehension of the underlying basis for Plaintiff's theory of recovery against Defendant. The Court acknowledges that its order contained an error. It stated that "Plaintiff's allegation that Defendant is a drug-testing laboratory that tested his urine specimen for his prospective employer Lazer Spot is sufficient to establish that Defendant owed a duty to Plaintiff." That is an inaccurate recitation of the allegations in the amended complaint. Plaintiff is not seeking to hold Defendant liable as a drug-testing laboratory; he is seeking to hold Defendant liable as a collection site. Nonetheless, the Court did not find that a duty of care existed because it determined that Defendant is a drug-testing laboratory. Instead, it reached this conclusion because it determined that there is an Illinois case on point, *Stinson v. Physicians Immediate Care, Ltd.*, 646 N.E.2d 930 (Ill. App. Ct. 1995), and Defendant had not pointed to any reason why the Court should disregard *Stinson*.

Despite the additional arguments raised by Defendant in its motion for reconsideration, the Court still believes that *Stinson* applies and imposes a duty on Defendant. First, federal law does not preempt the imposition of a duty of care. While the DOT regulations state that the determination of whether a prospective employee refused a drug test "is a non-delegable duty of the actual employer," 49 C.F.R. 40.355(i), Plaintiff is not trying to hold Defendant liable for

2

making the refusal determination. Rather, he is trying to hold it liable for altering the CCF after the collection and for reporting false information that he refused to provide a urine sample to his prospective employer Lazer Spot. Second, the Court will not consider Defendant's argument that it owed Plaintiff no duty to prevent economic harm. Defendant could have raised this argument in its motion to dismiss, but it did not. A motion for reconsideration is not the appropriate vehicle to raise this argument. *See Caisse Nationale*, 90 F.3d at 1270.

Third, Defendant's argument that *Stinson* applies only to a drug-testing laboratory and not to a collection site is improper to raise in a motion for reconsideration. *See id.* Defendant failed to even address *Stinson* in its motion to dismiss. It was given a second opportunity to distinguish *Stinson* by filing a reply brief, and it declined to do so. Even if it were proper to raise the argument, the Court would reject it because it does not read *Stinson* so narrowly. Defendant is correct that *Stinson* held "that a drug-testing laboratory owes a duty of reasonable care to persons whose specimens it tests for employers or prospective employers." 646 N.E.2d at 934. But it is not correct that allegations in *Stinson* were related only to the actual testing of the sample. The plaintiff in *Stinson* also alleged that the defendant owed him a duty of care in *collecting* the specimen. *See id.* at 931. And at least four of the acts that the plaintiff alleged breached this duty of care were related to the collection of the sample. *Id.*

Further, the reasoning of *Stinson* is not as limited as Defendant claims. In determining whether to impose a duty, the court weighed four factors: (1) "the foreseeability of the injury;" (2) "the likelihood of the injury;" (3) "the magnitude of the burden of guarding against it;" and (4) "the consequences of placing the burden on the defendant." *Id.* at 933. It found that "the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but

3

also is a virtual certainty in the event of a positive drug test result" and that "the likelihood of injury is great; the plaintiff allegedly lost his job and was hindered in his efforts to find other employment because of the false positive drug test report." *Id.* It also determined that "[t]he drug-testing laboratory is in the best position to guard against the injury, as it is solely responsible for the performance of the testing and the quality control procedures" and "is better able to bear the burden financially than the individual wrongly maligned by a false positive report." *Id.* at 934. Defendant has never explained why the reasoning of *Stinson* does not apply equally to collection sites, and the Court believes it does.

Fourth, the Court already declined to apply *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485 (N.Y. 2016). A motion for reconsideration is not the place to rehash an old argument. *See Caisse Nationale*, 90 F.3d at 1270. Further, as described above, the Court believes that *Stinson* is on point and applies equally to collection sites. Even if it did not, it would decline to apply *Pasternack*. While some state courts, including the New York Court of Appeals, have found that a collection site owes no duty of care to an employee whose urine specimens it collects for employment related drug tests, others have imposed a duty. *See e.g.*, *Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1221 (Penn. 2003); *Duncan v. Afton, Inc.*, 991 P.2d 739, 740 (Wyo. 1999). Defendant has not even cited these cases, let alone has it explained why the Illinois Supreme Court is more likely to apply *Pasternack* than it is to apply the decisions of other state supreme courts. In addition, the allegations in *Stinson* gave the court a perfect opportunity to distinguish between conduct that related to ministerial functions and conduct that implicated the scientific integrity of the test. It declined to do so. *Stinson* was decided in 1995 and has been applied by several courts. *See Gaylord v. Presence Pain Care*, No. 3-21-0572, 2023 WL

4

5233402, at *4 (Ill. App. Ct. Aug. 15, 2023); *Palonis v. Jewel Food Stores, Inc.*, 383 F. Supp. 2d 1072, 1074 (N.D. Ill. 2005); *Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 780 (N.D. Ill 2012). There is not a single Illinois court, or federal court applying Illinois law, that has interpreted the duty owed as narrowly as *Pasternack*.

Finally, the Court will not reconsider its finding that Plaintiff adequately pled proximate cause. A motion for reconsideration is not the proper forum to rehash old arguments. *See Caisse Nationale*, 90 F.3d at 1270. And even if it was, the argument has no merit. It is true that Lazer Spot made the refusal determination and reported the refusal to the FMCSA clearinghouse. Therefore, Lazer Spot's conduct is a proximate cause of Plaintiff's injuries. But contrary to Defendant's contentions, the actions of Lazer Spot do not break the causal chain. "An intervening event does not break the chain of legal causation . . . where that intervening event is foreseeable." *People v. Swift*, 67 N.E.3d 928, 939 (Ill. App. Ct. 2016). "In fact, there may be more than one proximate cause to an injury." *Id.* Here, Plaintiff alleges that he received an email that stated he refused to submit to drug test on August 31, 2022, the date he presented for a drug test at Defendant's facility. In addition, he alleges that an employee of Defendant called Lazer Spot and falsely stated that Plaintiff refused to provide a urine sample. Plaintiff alleges that, because of that false statement, Lazer Spot rescinded his offer of employment and his CDL was suspended. Although the DOT regulations require Lazer Spot to make the refusal determination, they allow Defendant, as a service agent, to provide advice and information regarding refusal-to-test issues. *See* 49 C.F.R. 40.355(i). Plaintiff alleges that Defendant provided Lazer Spot with false information about his refusal to provide a urine sample. The Court believes it is foreseeable that Lazer Spot would use that information to determine that Plaintiff refused a drug test and

5

would report that refusal to the FMCSA clearinghouse. At the very least, it is a factual issue that is sufficient to defeat dismissal at this stage of the proceeding. *See Mack v. Ford Motor Co.*, 669 N.E.2d 608, 613 (Ill. App. Ct. 1996) (stating that "where varying inferences are possible, foreseeability is a question for the jury").

B.  Request for Certification of an Interlocutory Appeal:

The Seventh Circuit, in its discretion, may hear an interlocutory appeal after certification from this Court that the appeal presents "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Accordingly, "[t]here are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. Of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). The party seeking an interlocutory appeal bears the burden of demonstrating "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972)).

Defendant has demonstrated that there is a controlling issue of law, and its resolution promises to speed up the litigation. In Illinois, whether a duty exists "is a question of law to be determined by the court." *Laufenberg v. Golab*, 438 N.E.2d 1238, 1240 (Ill. App. Ct. 1982) (quoting *Fancil v. Q. S. E. Foods, Inc.*, 328 N.E.2d 538, 540 (Ill. 1975)). If Defendant did not owe a duty to Plaintiff, Plaintiff's negligence claim will fail, and this proceeding will be

concluded. As such, an immediate appeal could materially advance the termination of this litigation. However, Defendant has failed to demonstrate that the issue is contestable. A question is contestable "if there are substantial, conflicting decisions regarding the claimed controlling issue of law or the question is not settled by controlling authority" and "there is a substantial likelihood that the district court ruling will be reversed on appeal." *Andrews v. Nw. Hosp.*, No. 25-CV-3372, 2026 WL 183756, at \*3 (N.D. Ill. Jan. 23, 2026). Here, there is controlling authority on point. *See Stinson*, 646 N.E.2d 930. Further, even if the Court read *Stinson* as narrowly as Defendant urges it to (it does not), *Pasternack* does not create a contestable issue. First, it is not controlling authority; it is a case from an entirely different jurisdiction. Second, in *Stinson*, the Illinois Appellate Court had the perfect opportunity to define the duty owed as narrowly as *Pasternack* and it declined to do so. There has not been a single Illinois court, or federal court applying Illinois law, that has interpreted the duty owed as narrowly as *Pasternack*. Defendant's citations to case law that is not controlling and imposes a duty much narrower than the one that has been imposed by the Illinois courts fails to show that the issue is contestable and does not persuade the Court "that this issue cries out for immediate resolution on appeal." *T.S. v. Cnty. of Cook*, 568 F. Supp. 3d 940, 942 (N.D. Ill. 2021).

## II.    CONCLUSION

The Court finds that there is no compelling reason to reconsider its order that denied Defendant's motion to dismiss. In addition, it declines to certify an interlocutory appeal. Therefore, the Court DENIES Defendant Gateway Regional Medical Center's Motion for Reconsideration (Doc. 28).

**IT IS SO ORDERED.**

DATED: **April 6, 2026**

**J. PHIL GILBERT**
**United States District Judge**